USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_______________
DATE FILED: September 30, 2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAHUL MANCHANDA

Plaintiff,

-v.-

SHI SHI WANG, et al.

Defendants.

23 Civ. 9403 (JHR)

OPINION & ORDER

JENNIFER H. REARDEN, District Judge:

Plaintiff Rahul Manchanda, appearing *pro se*,[1] brings this action against several New York State employees, including New York State Supreme Court Justice Erika Edwards ("Justice Edwards"); Law Clerk to Justice Edwards, Alana Gardner ("Defendant Gardner"); Administrative Assistant to Justice Edwards, Joshua Rodriguez ("Defendant Rodriguez");[2] New York State Family Court Support Magistrate Kevin Mahoney ("Magistrate Mahoney"); New York State Family Court Judge Anna Lewis ("Judge Lewis"); Assistant Attorney General for the State of New York, Shi-Shi Wang ("AAG Wang"); and New York State Attorney General Letitia James ("AG James") (collectively, the "State Defendants"), as well as the United States Department of Health and Human Services ("HHS") (together with the State Defendants,

[1] On October 26, 2023, Plaintiff commenced this action *pro se* as a licensed attorney. *See* ECF No. 1 (Compl.) at 13. On November 21, 2024, the Attorney Grievance Committee, First Judicial Department, disbarred Plaintiff. *See Manchanda v. Att'y Grievance Comm. 1st Dep't*, No. 25 Civ. 3935 (JPO), 2025 WL 2084388, at *1 (S.D.N.Y. July 24, 2025) ("The First Department affirmed the [Attorney Grievance Committee, First Judicial Department]'s decision to disbar Manchanda on the grounds that he used 'unacceptably bigoted language in state and federal courts,' 'divulged privileged information when responding to clients' complaints about him online,' and 'repeatedly made meritless, frivolous, and vexatious arguments well beyond the point at which he should have known better,' all in violation of the New York Rules of Professional Conduct." (quoting *Matter of Manchanda*, 222 N.Y.S.3d 42, 51 (1st Dep't 2024), *appeal dismissed*, 43 N.Y.3d 950 (2025))).

[2] "While State Defendant Rodriguez is captioned herein and described in the Complaint (¶ 27) as a 'law clerk,' his actual position is administrative assistant." ECF No. 36 at 8 n.1.

"Defendants"). ECF No. 1 (Compl.) at 1. Plaintiff asserts various causes of action relating to proceedings in state court concerning his child support obligations. *Id.* The State Defendants jointly, and HHS separately, moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 34 (State Defs.' Notice of Mot.) at 1; ECF No. 46 (HHS's Notice of Mot.) at 1. In addition, the State Defendants moved to "permanently enjoin[] Plaintiff or any person acting on his behalf, from filing any civil action in the Southern District of New York, against the State of New York, any New York State entity or agency, or any current or former New York State judge, official, or employee, without leave of the Court upon a showing that Plaintiff has a potentially meritorious claim." State Defs.' Notice of Mot. at 2.[3]

For the following reasons, the Court grants both the State Defendants' and HHS's motions to dismiss and denies the State Defendants' motion for a filing injunction as moot.

## BACKGROUND[4]

### A. Family Court Proceeding

On June 14, 2020, Plaintiff commenced an action in New York County Family Court, *Manchanda v. Kruzic*, Docket No. F-32483-09/20S (the "Family Court Proceeding"), seeking "to

---

[3] Plaintiff has a history of filing frivolous lawsuits and of using offensive, antisemitic language in this Court. *See, e.g.*, *Manchanda v. Lane*, No. 23 Civ. 7637 (NRB), ECF No. 55 at 18-19 (S.D.N.Y. Feb. 5, 2024) ("Indeed, courts within this District have warned Mr. Manchanda for many years—as far back as 2015—that a filing injunction would issue if he continued instituting frivolous actions."); *Manchanda v. Walsh*, No. 23 Civ. 7637 (NRB), 2024 WL 455204, at *2 n.4 (S.D.N.Y. Feb. 5, 2024) ("Plaintiffs' complaint [] contains vitriolic anti-Semitic comments."), *appeal dismissed*, No. 24-395, 2024 WL 5412393 (2d Cir. Sept. 25, 2024); *Manchanda v. Att'y Grievance Comm. 1st Dep't*, No. 25 Civ. 3935 (JPO), 2025 WL 2084388, at *2 (S.D.N.Y. July 24, 2025) ("Manchanda . . . again takes the opportunity to use offensive and pejorative terms to refer to those who have allegedly wronged him over the years—one of the practices for which he was disbarred in the first place."); *Manchanda v. Bose*, No. 15 Civ. 2313 (VSB), ECF No. 3 at 8 (S.D.N.Y. Apr. 16, 2015) ("Plaintiff is warned that the continued filing of frivolous or meritless lawsuits will result in an order barring Plaintiff from filing any new action in this Court without prior permission.").

[4] The facts discussed in this section are undisputed.

modify the Family Court's previous order, dated February 13, 2020, which directed Plaintiff to pay child support for two minor children that he has with his ex-wife in the amount of $500/week." *Manchanda v. Mahoney*, Index No. 155075/2023, NYSCEF No. 28 at 1-2 (N.Y. Sup. Ct. New York Cty., Oct. 25, 2023) (also filed as ECF No. 1-1). "Th[at] [previous] order was based on the terms of [Plaintiff and his ex-wife's] Stipulation of Settlement, which was also dated February 13, 2020, where Plaintiff agreed to pay [$500/week]." *Id.* at 2. "After approximately four months, Plaintiff claimed that he signed the Stipulation of Settlement under coercion and duress, that there was a substantial change in circumstances due to the CoronaVirus government shutdown/lockdown which destroyed his law firm, and that he needed a reduction in the amount of his child support payments." *Id*. (internal quotation marks omitted).

Magistrate Mahoney, who presided over Plaintiff's New York County Family Court action, "conducted a three-day downward modification trial on October 5, 2022, January 27, 2023, and May 10, 2023, which included his review of the documentary evidence filed by Plaintiff and Plaintiff's testimony." *Id*. "At the conclusion of the trial, [Magistrate Mahoney] denied Plaintiff's petition." *Id*. "According to the Order of Dismissal and Findings of Fact, [Magistrate Mahoney] found in substance that Plaintiff failed to meet his burden of proof for modification by failing to demonstrate sufficient changes of circumstances to warrant a downward modification of his child support payments." *Id.* "[Magistrate Mahoney] found that Plaintiff failed to present satisfactory job search proof for a person of his level of education and that he provided questionable testimony regarding his overall financial situation." *Id*. (internal quotation marks omitted). "Therefore, [Magistrate Mahoney] denied Plaintiff's petition and the amount of Plaintiff's child support payments remained the same." *Id*.

"Plaintiff filed Objections to the order [of Magistrate Mahoney] on May 25, 2023." *Id.* "Plaintiff argued in substance that the child support order violated New York State and federal law because the amount of child support was well over 50% of his income." *Id.* "In a Decision and Order, dated June 22, 2023, Family Court Judge Anna Lewis dismissed Plaintiff's Objections and affirmed [] [Magistrate Mahoney]'s order." *Id.* at 2-3. "Plaintiff was advised of his right to appeal [Judge Lewis's] order, but he failed to do so." *Id.* at 3.

**B. <u>State Supreme Court Proceeding</u>**

On June 4, 2023, Plaintiff commenced an action *pro se* in New York State Supreme Court, New York County against Magistrate Mahoney, challenging Magistrate Mahoney's May 10, 2023 order. *Mahoney*, NYSCEF No. 1 (the "State Supreme Court Proceeding"). In the State Supreme Court Proceeding, Plaintiff alleged that, in issuing the May 10, 2023 order, Magistrate Mahoney "willfuly [sic] violat[ed] the Child Support Standards Act ('CSSA') aka Family Court Act ('FCA') § 413 (1)(f)[]." *Id.* at 4-5. Plaintiff sought "(1) a reduction [in his child support responsibilities] from approximately $25,000 per year, $2000 per month ($500 per week) to 25% of his income to arrive at approximately $12,500 per year, $1000 per month, $250 per week, and (2) $10,000,000 in actual and punitive damages, as well as retroactive overage paid support since [Plaintiff commenced the Family Court Proceeding] in June 2020; and (3) such other and further relief as the Court deems just and proper, including applicable interest and the costs and disbursements of this action." *Id.* at 5.

On July 1, 2023, Plaintiff moved "for an Ex Parte Emergency Temporary Restraining Order or Preliminary Injunction pursuant to CPLR §§ 6311, 6312, 6313, and 6301 et seq." *Mahoney*, NYSCEF No. 5. Plaintiff filed an affirmation in support of his motion for a Temporary Restraining Order or Preliminary Injunction on July 11, 2023. *Mahoney*, NYSCEF No. 15. While Plaintiff's notice of motion and affirmation in support did not identify the specific

relief requested, Plaintiff's proposed order, submitted July 18, 2023, stated that he sought "a Stay on all further child support collections from the employer of [Magistrate] [] Mahoney under *Respondeat Superior* Child Support Enforcement Unit until the correct weekly dollar amount can be properly calculated." *Mahoney*, NYSCEF No. 20. Magistrate Mahoney responded to the motion on July 18, 2023. *Mahoney*, NYSCEF No. 18. Plaintiff filed a reply, also on July 18, 2023. *Mahoney*, NYSCEF No. 19.

Separately, on July 5, 2023, represented by AG James and AAG Wang, Magistrate Mahoney moved to dismiss Plaintiff's action in the State Supreme Court Proceeding. *Mahoney*, NYSCEF No. 7. Later that day, Plaintiff responded to the motion to dismiss in an affirmation. *Mahoney*, NYSCEF No. 14. Magistrate Mahoney filed a reply on August 1, 2023. *Mahoney*, NYSCEF No. 23.

On October 25, 2023, Justice Edwards "grant[ed] . . . [Magistrate] Mahoney's . . . motion to dismiss . . . and . . . denie[d] Plaintiff's motion for a temporary restraining order[5] or preliminary injunction." *Mahoney*, NYSCEF No. 28 at 1. In so ruling, Justice Edwards stated that, "[e]ven when affording Plaintiff's complaint a liberal construction, accepting all facts as alleged in the complaint to be true, according Plaintiff the benefit of every possible inference, and determining only whether the facts as alleged fit within any cognizable legal theory, the court finds that Plaintiff's complaint fail[ed] to state a cause of action for any of his claims." *Id.* at 6. Justice Edwards also held that she "lack[ed] subject matter jurisdiction over Plaintiff's causes of action," given that, "[a]t all relevant times mentioned, [Magistrate Mahoney] was

[5] Regarding Plaintiff's motion for an Ex Parte Emergency Temporary Restraining Order or Preliminary Injunction, Justice Edwards noted that "Plaintiff [had] failed to file his motion as an emergency ex parte order to show cause, so by the time the motion was marked fully submitted by motion support and oral argument was held, the temporary restraining order portion of the motion was moot." *Mahoney*, NYSCEF No. 28 at 3.

acting within the scope of his authority as a Family Court Support Magistrate employed by the New York State Court system." *Id*. Justice Edwards further ruled that "Plaintiff's non-monetary claims are barred by [Magistrate Mahoney]'s absolute judicial immunity and they do not fall within any exception" and that "Plaintiff failed to sufficiently allege the elements of his claims regarding constitutional or statutory violations." *Id*. Lastly, Justice Edwards held that "Plaintiff improperly raised additional claims against [Magistrate Mahoney] and Judge Lewis, who is not a named Defendant, in his opposition and reply papers." *Id*. at 5.

**C. <u>The Instant Action</u>**

On October 26, 2023, Plaintiff, proceeding *pro se*,[6] initiated the instant action. *See* Compl. According to Plaintiff, the "[C]omplaint concerns the non-stop malicious prosecution, aggravated harassment, abuse of process, vexatious litigation, judicial corruption, judicial bias, civil and criminal RICO, judicial misconduct, and public corruption, committed jointly by co-defendants since at least 2020 all the way to the present day." *Id*. ¶ 9. Specifically, Plaintiff alleges that "the various co-defendants[,] acting jointly and severally liable, engaged and embarked on the following federal crimes, torts, violations of law, and other acts thus prompting this federal lawsuit: . . . New York Supreme Court [Justice] Erika Edwards openly lie[d], cover[ed] up for Family Court Support Magistrate Kevin Mahoney, Assistant Attorney General Shi Shi Wang, Family Court Judge Anna Lewis, and others, in her written Decision (which could have been contributed to and written by her law clerks Alana Gardner and Joshua Rodriguez)" through myriad alleged violations.[7] *Id*. ¶¶ 26-27.

---

[6] As previously stated, Plaintiff commenced this action as a licensed attorney, before he was disbarred on November 21, 2024. *See supra* at n.1.

[7] The Complaint avers that Judge Lewis's decision "(A) glosses over the fact that the below family court downward modification case took more than 3 years not the statutory maximum of 2 years; (B) ignores that the COVID19 complete government shutdown of the courts

Plaintiff asserts the following causes of action: (1) "violations of 42 U.S.C. § 1983 pertaining to a civil action for deprivation of rights under the color of law and authority by government/judicial/public official defendants"; (2) "violations of 42 U.S.C. § 2000ee-1(e) dealing with Reprisals/Retaliation for filing bona fide legitimate complaints against government employees"; (3) "violations of the federal Child Support Standards Act ('CSSA') by Defendants"; (4) "Abuse of Process by the Defendants"; (5) "Malicious Prosecution by Defendants"; and (6) "Judicial Bias and Prejudice by the Defendants." *Id.* ¶¶ 29-41. Plaintiff seeks $20,000,000 in damages for each cause of action, *id.* ¶¶ 30, 32, 34, 36, 38, 40, and "such other and further relief as this Court deems just and proper, including applicable interest, costs, expenses, and disbursements of this action," *id.* ¶ 41.

---

(undersigned lawyers bread and butter) or his bankruptcy filing case SDNY 23-22095 would have risen to 'changed circumstances' necessitating a downward modification; (C) does not define her constant use of the phrase 'questionable testimony' which guides her decision to deny Plaintiff's downward modification; (D) completely ignores the CSSA and its New York equivalent FCA § 413 which mandates the production of financials of BOTH parents, custodial and non, even though custodial parent did not provide any financials required by black letter law before issuing a child support order decision; (E) lies and states that Plaintiff is currently paying 50% of his income (CSSA mandates 25%) when it is in fact closer to 2000%; (F) ignores the fact that New York Family Court Judge Anna Lewis issued her 'decision' after Plaintiff filed his New York Supreme Court action, because he could no longer wait another 3 years at $2000 per month for these lazy malicious government employees to get it together; (G) lies and states that Plaintiff is requesting to pay $250 per week, when by his financials it should be $100 per week; (G) ignores the fact that the ECF law clerk inexplicably and illegally deleted Plaintiff's Temporary Restraining Order ('TRO') application first filed as Motion 1, which she ignored, to skew and make it look like it was Motion 2; (H) ignores that Plaintiff's WHEREFORE ending clause clearly requests specific relief; (I) ignores that New York Court of Claims lacks jurisdiction over individual defendants (including government workers), torts, crimes, and other legal and equitable relief; (J) wrongfully bestows 'judicial immunity' on the crimes and torts of Kevin Mahoney, who is not only not a 'judge,' but not even a 'lawyer,' let alone even a college graduate, who barely graduated high school, truly an unacceptable individual to determine such complex legal and factual disputes tending to directly affect Plaintiff's life, liberty, property, and freedom; (K) ignores that both New York Family Court and New York Supreme Court have concurrent jurisdiction over family court matters; (L) improperly granted a premature Motion to Dismiss when there are bona fide, legitimate and material disputes of both fact and law, thus violating CPLR 3211; (M) other glaring errors of law and fact." Compl. ¶ 27.

On December 22, 2023, the State Defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) and moved "for an order pursuant to the Court's inherent authority and the All Writs Act, 28 U.S.C. § 1651, permanently enjoining Plaintiff or any person acting on his behalf, from filing any civil action in the Southern District of New York, against the State of New York, any New York State entity or agency, or any current or former New York State judge, official, or employee, without leave of the Court upon a showing that Plaintiff has a potentially meritorious claim." State Defs.' Notice of Mot. at 1-2. On the same date, December 22, 2023, Plaintiff filed his Affirmation in Opposition to the State Defendants' Motion to Dismiss and Filing Injunction. *See* ECF No. 38 (Pl.'s State Opp.). On January 5, 2024, the State Defendants filed a reply in further support of their motion to dismiss and motion for a filing injunction. ECF No. 40. Plaintiff filed a letter, which essentially functioned as an unsanctioned sur-reply, in further opposition to the State Defendants' motion to dismiss and for a filing injunction on January 6, 2024. ECF No. 42 (Pl.'s State Sur-Reply).

On March 11, 2024, HHS moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). HHS's Notice of Mot. Plaintiff filed his Reply Affirmation in Opposition to HHS's Motion to Dismiss on March 13, 2024, in which he introduced new allegations that HHS is "guilty of intentional torts and criminal acts," that Plaintiff has filed "countless FTCA or equivalent complaints against HHS over the past 17 years with zero response," that "various members of HHS . . . have ignored plaintiff's complaints and requests for investigation (or acquiesced) for the past 17 years," and that Plaintiff "report[ed] the tortious/criminal conduct of HHS to DHS." ECF No. 50 at 2-5.[8] On March 27, 2024, HHS filed a reply in further support of

[8] "The Court . . . does not consider the additional facts alleged in [Plaintiff's] brief[]." *Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, No. 21 Civ. 6154 (JPC), 2022 WL 1748410, at *1 n.1 (S.D.N.Y. May 31, 2022). "It is a well-settled rule that factual allegations contained in legal

its motion to dismiss. ECF No. 52. Plaintiff filed a letter—essentially an unsanctioned sur-reply—in further opposition to HHS's motion to dismiss on March 28, 2024. ECF No. 54 (Pl.'s HHS Sur-Reply). On April 1, 2024, HHS filed a letter "request[ing] the Court's permission to file a short letter in response to the March 28, 2024, letter Plaintiff filed in sur-reply to HHS's motion to dismiss Plaintiff's complaint," ECF No. 55 at 1, which the Court granted that day, ECF No. 56 at 1. HHS filed its letter on April 3, 2024. ECF No. 57 (April 3, 2024 Letter).[9]

## STANDARDS OF REVIEW

### A. <u>Federal Rule of Civil Procedure 12(b)(1)</u>

"Federal district courts are courts of 'limited jurisdiction' and must confirm that they have subject matter jurisdiction over matters before them." *Whittingham v. Tress*, No. 23 Civ. 6058 (VSB), 2024 WL 3252595, at *4 (S.D.N.Y. July 1, 2024) (citing *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62-63 (2d Cir. 2009)), *appeal dismissed*,

---

briefs or memoranda are treated as matters outside the pleading for purposes of Rule 12(b) and, therefore, cannot be considered by the Court at the motion to dismiss stage." *Id*. (cleaned up) (quoting *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), 2008 WL 2020363, at *10 (S.D.N.Y. May 7, 2008)). Although a court "may consider factual allegations made by a *pro se* party in his papers opposing [a] motion," *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013), "[i]f Plaintiff is a lawyer, even a disbarred lawyer, he is not entitled to the special solicitude granted to *pro se* litigants," *Savitt v. Samuels*, No. 25 Civ. 1159 (LLS), 2025 WL 1474497, at *1 n.1 (S.D.N.Y. May 21, 2025); *see infra* Standards of Review § C.

[9] After the State Defendants' and HHS's motions were briefed, Plaintiff filed a letter on May 8, 2024 to "remind the Court that [he] [was] also questioning the relationship by and between the local, state and federal child support enforcement units, family court magistrates and judges, and the private corporation Conduent owned by billionaire New York City Oligarch Carl Icahn who profits immensely from their coordinated violation of state and federal law as described in the instant complaint, as well as the wholesale approval and sanctioning of this criminal conduct by former Romanian Communist born, Ninth Circuit Judge Alex Kozinski in his seminal forced child support enforcement case violating the United States and California constitutions in multi-variate ways." ECF No. 59. On May 18, 2024, Plaintiff filed an additional letter attaching "a recent article entitled 'Pro-Israel billionaires urged New York crackdown on Gaza protests.'" ECF No. 60 at 1.

No. 24-2047, 2025 WL 465660 (2d Cir. Jan. 15, 2025). "Such a determination is a threshold issue." *Id.* (citing *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

"A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court 'lacks the statutory or constitutional power to adjudicate it.'" *Id.* (quoting *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "An argument that the court does not have subject matter jurisdiction pursuant to the Rooker-Feldman doctrine is properly considered under Rule 12(b)(1)" as well. *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018).

Where a Rule 12(b)(1) motion is "facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it," the court accepts those allegations as true and "the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016) (cleaned up). But where the defendant "make[s] a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading," the plaintiff must "come forward with evidence of [his] own to controvert that presented by the defendant." *Id.* Accordingly, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings," and the plaintiff must prove "by a preponderance of the evidence" that jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**B. <u>Federal Rule of Civil Procedure 12(b)(6)</u>**

"To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Whittingham*, 2024 WL 3252595, at *5 (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). "A complaint need not make 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "This standard demands 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Id*. (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

"In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor." *Id.* "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route," and "the facts supporting the defense [must] appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also Moye v. City of New York*, No. 11 Civ. 316 (PGG), 2012 WL 2569085, at *4 (S.D.N.Y. July 3, 2012) ("Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint.").

"A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Whittingham*, 2024 WL 3252595, at *5 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)). "A court may

also consider matters of which judicial notice may be taken in ruling on a motion to dismiss, including docket sheets." *Id.* (cleaned up). "Finally, although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### C. *Pro Se* Litigant

"If Plaintiff is a lawyer, even a disbarred lawyer, he is not entitled to the special solicitude granted to *pro se* litigants." *Savitt v. Samuels*, No. 25 Civ. 1159 (LLS), 2025 WL 1474497, at *1 n.1 (S.D.N.Y. May 21, 2025) (citing *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all.")).

## DISCUSSION

### A. To the Extent Plaintiff Seeks Review of the Family Court Proceeding or State Supreme Court Proceeding, This Court Lacks or Abstains from Exercising Subject Matter Jurisdiction.

#### 1. *Rooker-Feldman*

"To the extent Plaintiff seeks review of a state court judgment [regarding] . . . child support, this Court lacks subject matter jurisdiction to hear such a claim, under the *Rooker-Feldman* doctrine." *John of the Fam. Springer v. Stack*, No. 24 Civ. 6672 (LTS), 2025 WL 1115022, at *3 (S.D.N.Y. Apr. 14, 2025) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983)). "This doctrine precludes federal district courts from reviewing final judgments of the state courts." *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

"The *Rooker-Feldman* doctrine applies where a plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the

state-court judgment was rendered." *Id.* (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

Where, as here, the "claims against [the state court officials] concern the collection of child support payments, these claims are barred under the *Rooker-Feldman* doctrine because they ultimately challenge a child support order." *Id.* at *4; *see, e.g.*, *Remy v. N.Y. State Dep't of Tax'n & Fin.*, No. 09 Civ. 4444 (SJF) (AKT), 2010 WL 3926919, at *3 (E.D.N.Y. Sept. 29, 2010) (rejecting plaintiff's argument that a federal court had jurisdiction where the child support judgment allegedly "violated his constitutional rights," because, if accepted, the argument "would obliterate the *Rooker-Feldman* doctrine"), *aff'd*, 507 F. App'x 16 (2d Cir. 2013); *Davis v. Westchester Cty. Fam. Ct.*, No. 16 Civ. 9487 (KMK), 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017) (noting that a challenge to "the constitutional adequacy of the proceedings [wa]s of no help to" the plaintiff because the *Rooker-Feldman* doctrine applied) (collecting cases).

"Plaintiff does not dispute any of the elements of the *Rooker-Feldman* doctrine," *Davis*, 2017 WL 4311039, at *8, apart from advancing his conspiratorial notion that "[t]his doctrine does not apply to jewish [sic] organized crime." Pl.'s State Opp. at 7. In any event, "a review of the Complaint and state court records make clear that this case satisfies each element." *Davis*, 2017 WL 4311039, at *8. "First, Plaintiff was, by his own admission, the loser in state court," *id.*, as the Complaint notes that "[Justice] Edwards . . . [,] in her written Decision . . . granted a . . . Motion to Dismiss," Compl. ¶ 27, of Plaintiff's complaint in the State Supreme Court Proceeding. Plaintiff also lost in the Family Court Proceeding when, "[i]n a Decision and Order, dated June 22, 2023, Family Court Judge Anna Lewis dismissed Plaintiff's Objections and affirmed [] [Magistrate Mahoney]'s order." *Mahoney*, NYSCEF No. 28 at 2-3. Skipping to the fourth element, that "is also met, as [the Family Court Proceeding and State Supreme Court

Proceeding] judgment[s] w[ere] entered on [June 22, 2023 by Judge Lewis and October 25, 2023 by Justice Edwards, respectively], and this Action commenced on [October 26, 2023]." *Davis*, 2017 WL 4311039, at *8.

"While the satisfaction of the second and third elements is, perhaps, less intuitive, even a cursory review of the Complaint and existing case law confirms that Plaintiff's Action satisfies each of these elements: 'Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears.'" *Id.* (quoting *Kneitel v. Palos*, No. 15 Civ. 2577 (NGG) (VVP), 2015 WL 3607570, at *7 (E.D.N.Y. June 8, 2015)); *see also Remy*, 2010 WL 3926919, at *3 (holding that where a plaintiff sought compensatory damages under § 1983 for purported constitutional violations in connection with a child support proceeding, "the *Rooker-Feldman* doctrine bar[red] consideration of [the] [p]laintiff's claims"); *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355-56 (E.D.N.Y. 2004) (holding that the plaintiff's "allegations that [the hearing examiner] denied her due process and equal protection" in setting a child support amount were barred by *Rooker-Feldman*). "Here, Plaintiff makes clear throughout this Complaint that his alleged damages arise from the constitutional violations he claims were inflicted on him by way of the . . . Family Court proceedings and the resulting judgment against him," as well as the subsequent State Supreme Court Proceeding. *Id.*; *see also* Compl. ¶ 9 ("[T]his complaint concerns the non-stop malicious prosecution, aggravated harassment, abuse of process, vexatious litigation, judicial corruption, judicial bias, civil and criminal RICO, judicial misconduct, and public corruption, committed jointly by co-defendants since at least 2020 . . ."); Compl. ¶ 27 ("New York Supreme Court [Justice] Erika Edwards openly lies, covers up for Family Court Support Magistrate Kevin Mahoney, Assistant Attorney General Shi Shi Wang, Family Court Judge Anna Lewis, and others, in her written Decision . . ."). "Plaintiff is

seeking damages arising directly out of the state court proceedings and judgment rendered against him, and his claims therefore fall within *Rooker-Feldman.*" *Davis*, 2017 WL 4311039, at *8.

**2. *Domestic-Relations Abstention***

Alternatively, the domestic-relations abstention doctrine warrants dismissal of Plaintiff's claims against the State Defendants. "A federal court presented with . . . issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Deem v. DiMella-Deem*, 800 F. App'x 62, 62-63 (2d Cir. 2020) (summary order) (quoting *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)).[10] "That Plaintiff invokes rights guaranteed him by the federal Constitution[] and federal law does not change the fact that [ ] the alleged violations occurred during the course of his state divorce and child-custody proceedings." *Deem v. DiMella-Deem*, No. 18 Civ. 11889 (KMK), 2019 WL 1958107, at *12 (S.D.N.Y. May 2, 2019), *aff'd*, 800 F. App'x 62 (2d Cir. 2020); *see also Sullivan v. Xu*, No. 10 Civ. 3626 (ENV), 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) ("Although [the] plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters. Therefore, this action is dismissed[.]"). "Plaintiff would have an adequate opportunity for judicial review of the federal constitutional claims in state court. After the Family Court enter[ed] a final order, Plaintiff [could have] appeal[ed] that decision within the state court system and raise[d] there all federal

[10] The domestic-relations abstention doctrine does not apply to Plaintiff's claims against HHS, as those claims may be heard only in federal court. "[I]t rests with Congress to determine not only whether the United States may be sued, but [also] in what courts the suit may be brought." *Minnesota v. United States*, 305 U.S. 382, 388 (1939). No statute consents to suit against a federal agency for money damages in state court. Therefore, there is an "obstacle to the[] full and fair determination in state courts," *Deem*, 800 F. App'x at 62-63, of Plaintiff's claims against HHS.

constitutional claims," *Deem*, 2019 WL 1958107, at *11, but "he failed to do so," *Mahoney*, NYSCEF No. 28 at 3. Although Plaintiff contends that an appeal to the Appellate Division "would [have been] useless and moot since plaintiff's claims lie in state/family court violations of federal law, not state/family court law," Pl.'s State Opp. ¶ 18, "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights," *Haywood v. Drown*, 556 U.S. 729, 735 (2009).

### B. The Court Does Not Have Subject Matter Jurisdiction over Plaintiff's 18 U.S.C. § 242 Claim, as Plaintiff Cannot Initiate Criminal Prosecution.

The Complaint appears to allege—though does not list as a cause of action—that at least some of the Defendants engaged in criminal acts, citing "federal criminal code, Section 242 of Title 18." Compl. ¶ 19. Section 242 establishes that it is unlawful to "subject[] any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242.

"Plaintiff's claims in which he seeks the criminal prosecution of at least some of the defendants must be dismissed." *El Dey v. Bd. of Corr.*, No. 22 Civ. 2600 (LTS), 2022 WL 2237471, at *3 (S.D.N.Y. June 22, 2022). "Plaintiff cannot initiate the prosecution of an individual or other entity in this court because 'the decision to prosecute is solely within the discretion of the prosecutor.'" *Id.* (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981)). "Plaintiff also cannot direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are 'immune from control or interference by citizen or court.'" *Id.* (quoting *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972)). "Accordingly, because Plaintiff lacks standing to cause the criminal prosecution of others, the Court dismisses, for lack of subject matter jurisdiction, any claims, including any under 18 U.S.C. §[] . . . 242, in which Plaintiff

seeks the criminal prosecution of any of the defendants." *Id.* (citations omitted); *see also Chapman v. Maycock*, No. 21 Civ. 4940 (KAM) (JRC), 2021 WL 6091749, at *2 (E.D.N.Y. Dec. 23, 2021) (ruling that "Plaintiff's allegations, even liberally construed, fail to state claims 'arising under the Constitution, laws, or treaties of the United States'" where "Plaintiff brings . . . action pursuant to [*inter alia*] . . . 18 U.S.C. § 242" (quoting 28 U.S.C. § 1331)).

### C. <u>Defendants Are Entitled to Immunity on Plaintiff's Remaining Claims.</u>

#### 1. *The Eleventh Amendment Precludes Plaintiff's Claims for Damages to the Extent that They Are Alleged Against the State Defendants in Their Official Capacities.*

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Moodie v. James*, No. 23 Civ. 10708 (LTS), 2024 WL 2330848, at *3 (S.D.N.Y. May 22, 2024) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). Moreover, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (quoting *Gollomp*, 568 F.3d at 366). "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Id.* (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).

The Complaint does not state whether Plaintiff is suing the State Defendants in their official or individual capacities. *See generally* Compl. However, to the extent Plaintiff is suing the State Defendants in their official capacities, the Eleventh Amendment precludes Plaintiff's claims for damages against each of the State Defendants: (1) AG James and AAG Wang, *see id.* ("Plaintiff['s] . . . claims for damages against New York State Attorney General Letitia James . . . are precluded by the Eleventh Amendment."); (2) Justice Edwards, Magistrate

Mahoney, and Judge Lewis, *see Davis*, 2017 WL 4311039, at *7 (holding the "[Westchester County Family Court Magistrate] [was] immune" under the Eleventh Amendment "insofar as the Complaint alleges claims against her in her official capacity"); and (3) Defendants Gardner and Rodriguez, *see Komatsu v. City of New York*, No. 20 Civ. 6510 (LLS), 2020 WL 8641274, at *2 (S.D.N.Y. Oct. 22, 2020) ("Plaintiff's claims under federal law against . . . Defendant Vaughan [a New York State Supreme Court Justice's law clerk], in [his] official capacit[y], are barred by the doctrine of Eleventh Amendment immunity."), *aff'd sub nom. Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676, 2021 WL 6060603 (2d Cir. Dec. 20, 2021).

### 2. *Judicial and Government-Attorney Immunity Precludes Plaintiff's Claims for Damages to the Extent that They Are Alleged Against the State Defendants in Their Individual Capacities.*

#### a. Judicial Immunity

"Plaintiff's claims under federal law against [Justice Edwards, Magistrate Mahoney, Judge Lewis, and Defendants Gardner and Rodriguez], in their individual capacities, are barred under the doctrine of judicial immunity." *Komatsu*, 2020 WL 8641274, at *3. "Under this doctrine, judges are absolutely immune from suit for claims against them in their individual capacities for damages for any actions taken within the scope of their judicial responsibilities." *Id*. (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). "Generally, 'acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature.'" *Id*. (alteration in original) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id*. (alteration in original) (quoting *Bliven*, 579 F.3d at 209). "This is because '[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . .'" *Id*. (alterations in original) (quoting *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994)).

"Judicial immunity does not apply when a judge acts outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken 'in the complete absence of all jurisdiction.'" *Id*. (quoting *Mireles*, 502 U.S. at 11-12). "But 'the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge.'" *Id*. (alteration in original) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). "This immunity also applies to government officials, including New York Supreme Court Justices' law secretaries, for their acts that assist a judge in the performance of his or her judicial duties." *Id*. (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)); *see also Kane v. Malone*, No. 25 Civ. 0951 (RER) (LB), 2025 WL 1453891, at *3 (E.D.N.Y. Mar. 7, 2025) (stating that "plaintiff's claims against court clerks Jennifer Malone, Monique Kennedy, John Does 1 and 2, and Jane Roe must also be dismissed as each such defendant has absolute immunity" because "[a]bsolute judicial immunity extends to court clerks who are performing tasks which are judicial in nature and an integral part of the judicial process" (cleaned up)); *Combier v. New York*, No. 09 Civ. 5314 (RJH) (FM), 2010 WL 3785130, at *10 (S.D.N.Y. Aug. 25, 2010) (Maas, M.J.) ("Judges obviously do not work without assistants. For this reason, judicial immunity may also protect defendants who are court employees."), *report and recommendation adopted*, 2010 WL 3835030 (S.D.N.Y. Oct. 1, 2010).

"Plaintiff's claims against [Justice Edwards, Magistrate Mahoney, and Judge Lewis] arise from [their] actions and decisions in . . . [the Family Court Proceeding and the State Supreme Court Proceeding, which] [they] presided over." *Komatsu*, 2020 WL 8641274, at *3. "And his claims against Defendant[s] [Gardner and Rodriguez] arise from," *id*., the possibility that they "contributed to and wr[ote]" the October 25, 2023 decision by Justice Edwards dismissing Plaintiff's action against Magistrate Mahoney, *see* Compl. at 9. "This alleged conduct by . . .

th[e]se defendants is well within the scope of judicial duties." *Komatsu*, 2020 WL 8641274, at *3. "[Justice Edwards, Magistrate Mahoney, Judge Lewis, and Defendants Gardner and Rodriguez] are therefore immune from suit as to Plaintiff's claims against them, in their individual capacities, under the doctrine of judicial immunity." *Id.*

**b. Government-Attorney Immunity**

"Plaintiff's claims against [AG James and AAG Wang] must also be dismissed." *Bose*, ECF No. 3 at 5. Plaintiff's allegations against AG James and AAG Wang arise out of the New York State Attorney General's defense of Magistrate Mahoney in the State Supreme Court Proceeding. *See* Compl. ¶ 27. But "a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process," such as functions "closely associated with the conduct of litigation or potential litigation" in civil suits, "including the defense of such actions." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (cleaned up); *see Komatsu*, 2020 WL 8641274, at *4 ("The Court must also dismiss Plaintiff's claims . . . against [New York City Human Resources Administration attorneys] Mosczyc and Gerber, in their individual capacities . . . under the doctrine of government-attorney immunity."). "For this reason, the claim[s] [are] dismissed because [they] seek[] monetary relief against [] Defendant[s] who [are] immune from suit." *Bose*, ECF No. 3 at 5.

***3. The Court Lacks Jurisdiction over Plaintiff's Claims Against HHS Under the Doctrine of Sovereign Immunity.***

"Plaintiff's claims against [HHS] are dismissed because the doctrine of sovereign immunity bars federal courts from hearing all suits for monetary damages against the federal government, including its agencies and employees acting in their official capacities, except

where sovereign immunity has been waived." *Bose*, ECF No. 3 at 5 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).

"Although the Federal Tort Claims Act, codified at 28 U.S.C. §§ 2671-80 ('FTCA'), provides for a waiver of that immunity for certain claims for monetary damages arising from the tortious conduct of federal government officers or employees acting within the scope of their office or employment, *see id.* § 1346(b)(1), Plaintiff's allegations do not include facts implicating tortious conduct by government officials." *Id*. at 5-6. "Thus, the FTCA is inapplicable to this case." *Id*. at 6.

"And even if the FTCA were implicated, a plaintiff must comply with the FTCA's procedural requirements before the Court can entertain his claim." *Id*. at 6 (citing *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999)). "Before bringing a claim in a federal district court under the FTCA for monetary damages, a claimant must first exhaust his administrative remedies by filing a claim for monetary damages with the appropriate federal government entity and must receive a final written determination." *Bose*, ECF No. 3 at 6 (citing 28 U.S.C. § 2675(a)). "If no final written determination is made by the appropriate federal government entity within six months of the date of the claimant's filing, the claimant may bring a FTCA action in a federal district court." *Id*. (citing 28 U.S.C. § 2675(a)). "This requirement is jurisdictional and cannot be waived." *Id*. (citing *Wang v. United States*, 61 F. App'x 757, 759 (2d Cir. 2003) (summary order)). "[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 [SF-95]." 28 C.F.R. § 14.2(a). "[A]ctual receipt is required"; "the mere mailing of a notice of claim does not satisfy the FTCA's presentment requirement." *Cooke v. United States*, 918 F.3d 77, 82 (2d Cir. 2019).

"The burden is on the plaintiff to both plead and prove compliance with the statutory requirements." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987).

Plaintiff has not met his burden. Although Plaintiff attached an SF-95 dated September 17, 2023 to his Complaint, ECF No. 1-1 at 1-2, HHS "ha[d] no record of receiving [that] SF-95" before this action was filed, ECF No. 48 ¶ 3. Similarly, Plaintiff attached an SF-95 dated January 28, 2023 to his unsanctioned sur-reply, Pl.'s HHS Sur-Reply at 3, but HHS had "no [] record of receiving [it]" until it was filed on the docket in this case, ECF No. 57-1 ¶ 3. Because Plaintiff has not "come forward with evidence of [his] own to controvert that presented by [HHS]," *Carter*, 822 F.3d at 57, the Court finds that neither SF-95 was presented—let alone denied or pending for six months—before this lawsuit was filed. *See Jaghama v. United States*, No. 11 Civ. 5826 (NG), 2013 WL 508497, at *2 (E.D.N.Y. Feb. 11, 2013) ("[Plaintiff] offers no proof of actual receipt . . . . Plaintiff here provides only a copy of the SF-95 . . . along with a representation in his brief that the form was mailed."). Plaintiff's unsanctioned sur-reply included another SF-95, dated October 26, 2020, but that document alleged only "illegal/unethical/immoral misconduct" by non-federal employees. Pl.'s HHS Sur-Reply at 5; *see* April 3, 2024 Letter at 3 n.4. Because the FTCA waives sovereign immunity only for claims involving the "tortious conduct of federal government officers or employees," *Bose*, ECF No. 3 at 5, the October 2020 SF-95 did not exhaust any claims for which the FTCA waives sovereign immunity. "Therefore, any claims for monetary damages against the federal government are dismissed under the doctrine of sovereign immunity." *Id.*[11]

[11] While the Court does not invoke this proposition in adjudicating either of the motions to dismiss, it notes that "[t]here is no private right of action under 42 U.S.C. § 2000ee-1, as Plaintiff recently was advised in [other] case[s] he brought in this District." *Manchanda v. Reardon*, No. 23 Civ. 9292 (JPC) (KHP), 2023 WL 8879226, at *4 (S.D.N.Y. Dec. 22, 2023); *see also Manchanda v. Lewis*, No. 20 Civ. 1773 (GBD) (RWL), 2021 WL 746212, at *7 (S.D.N.Y. Feb.

**D. The Court Declines to Grant Leave to Amend.**

Generally, "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once." *Tasfay v. Ramos*, No. 20 Civ. 5472 (PAE) (JLC), 2022 WL 2338323, at *6 (S.D.N.Y. June 29, 2022) (Cott, M.J.), *report and recommendation adopted*, 2022 WL 3225623 (S.D.N.Y. Aug. 10, 2022). However, when, as here, "Plaintiff is a lawyer, even a disbarred lawyer, he is not entitled to the special solicitude granted to *pro se* litigants." *Savitt*, 2025 WL 1474497, at *1 n.1. In any event, "a court may dismiss the claims of a *pro se* litigant without leave to amend when 'the substance of the claim pleaded is frivolous on its face.'" *Tasfay*, 2022 WL 2338323, at *6 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). The Court need not grant leave to amend where "'the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.'" *Id.* (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice." (citation omitted)).

"In this case, [P]laintiff's timely claims are not only frivolous on their face, but also appear to be largely based upon delusions." *See Sleigh v. Charlex, Inc.*, No. 03 Civ. 1369 (MBM), 2004 WL 2126742, at *9 (S.D.N.Y. Sept. 14, 2004). "[Plaintiff] is not a stranger to this court"; he has a history of filing "duplicative, vexatious, or clearly meritless appeals, motions, or

23, 2021), *report and recommendation adopted*, 2021 WL 1192083 (S.D.N.Y. Mar. 30, 2021), *aff'd*, No. 21-1088, 2021 WL 5986877 (2d Cir. Dec. 17, 2021) (summary order), *cert. denied*, 143 S. Ct. 96 (2022). "Because Plaintiffs' 42 U.S.C. § 2000ee-1(e) claim lacks a statutory basis, it should be dismissed[.]" *Lewis*, 2021 WL 746212, at *7. Similarly, "there is no private right of action under [18 U.S.C.] section 242." *Hill v. Didio*, 191 F. App'x 13, 14-15 (2d Cir. 2006) (summary order) (citing *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)).

other papers in [this] court." *Manchanda v. Att'y Grievance Comm. for First Jud. Dep't*, No. 23 Civ. 3356 (JLR), 2023 WL 3091787, at *2 (S.D.N.Y. Apr. 26, 2023). Plaintiff's claims appear to be based on an antisemitic conspiracy theory that "wealthy Jewish billionaire oligarchs, in exchange for assisting defendants financially, or because they are beholden to them, are abusing their government positions by going after lawyers and litigants who criticize or file lawsuits against their Jewish" contacts. Compl. ¶ 28; *see* Pl.'s State Opp. ¶ 2 (claiming that "it [could not] be expected that Plaintiff Rahul Manchanda could possibly receive fair and impartial treatment in this case" because of "[J]ewish presiding Magistrate Judge Robert Lehrburger"); *see also supra* at n.3.

"[P]laintiff's complaint is frivolous on its face, and must be dismissed without leave to amend or replead." *Sleigh*, 2004 WL 2126742, at *9 (citation omitted).

### E. <u>The State Defendants' Motion for a Filing Injunction Is Denied as Moot.</u>

On December 22, 2023, the State Defendants moved "for an order pursuant to the Court's inherent authority and the All Writs Act, 28 U.S.C. § 1651, permanently enjoining Plaintiff or any person acting on his behalf, from filing any civil action in the Southern District of New York, against the State of New York, any New York State entity or agency, or any current or former New York State judge, official, or employee, without leave of the Court upon a showing that Plaintiff has a potentially meritorious claim." State Defs.' Notice of Mot. at 2. In his unsanctioned sur-reply to the State Defendants' motion, Plaintiff contended that "each and every one of the frivolous grounds that opposing counsel [ ] uses to try and request a 'filing injunction' are currently being actively litigated in the Southern District of New York, in[,] [*inter alia*,] sister case[] index number[] . . . 23-CV-7637," Pl.'s State Sur-Reply at 2, referring to Plaintiff's case before the Honorable Naomi Reice Buchwald, captioned *Manchanda v. Lane*, No. 23 Civ. 7637 (NRB).

In *Manchanda v. Lane*, on February 5, 2024, Judge Buchwald "ORDERED[,] [*inter alia*,] that Rahul Manchanda is enjoined from filing any action in the United States District Court for the Southern District of New York without first obtaining leave of that court by way of the specific procedure set forth in this injunction[.]" *Lane*, ECF No. 56 at 1. Judge Buchwald "ORDERED that this order and injunction [were to be] stayed for a period of fourteen (14) days to allow Rahul Manchanda to seek appellate review." *Id*. at 4. Plaintiff filed such an appeal on February 6, 2024. *Lane*, ECF No. 57. On September 25, 2024, the Second Circuit dismissed Plaintiff's appeal "because it 'lacks an arguable basis either in law or in fact.'" *Manchanda v. Lane*, No. 24-395, 2024 WL 5412393, at *1 (2d Cir. Sept. 25, 2024) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *see also Manchanda v. Att'y Grievance Comm. 1st Dep't*, No. 25 Civ. 3935 (JPO), 2025 WL 2084388, at *1 (S.D.N.Y. July 24, 2025) ("Manchanda is subject to a filing injunction in this District . . . so he must first comply with the procedural requirements issued by Judge Buchwald to proceed with this action."). The State Defendants' motion for a filing injunction is therefore denied as moot.

**CONCLUSION**

For the reasons set forth above, the Court (1) dismisses Plaintiff's claims—without prejudice only to the extent that the Court lacks subject matter jurisdiction, as detailed above; (2) declines to grant Plaintiff leave to amend his Complaint; and (3) denies the State Defendants' motion for a filing injunction as moot.

The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: September 30, 2026
New York, New York

Jennifer H. Rearden
JENNIFER H. REARDEN
United States District Judge